We'll start with 20-7002, Pacheco v. El Habti. Ms. Shin. Oh. I'll get used to this. Oh, I recognize another familiar face. Good morning, Jim Seymour. Can you hear me? Yes. Okay, good.  Good morning, Your Honors, and may it please the Court. My name is Kathleen Shin, and I represent the appellate, Ms. Delilah Pacheco. Ms. Pacheco's revert claim was not subject to the statute of limitations because she is actually innocent of the underlying offense. It is well established that Edka's statute of limitations can be overcome by showing actual innocence. And actual innocence means that it is more likely than not that no reasonable juror would have convicted. Under this standard, Ms. Pacheco is actually innocent. In order to convict her of Oklahoma first-degree murder, the state of Oklahoma would have had to prove that Ms. Pacheco was not an Indian or that the offense did not occur in Indian country. But Ms. Pacheco is an Indian, and the offense did occur in Indian country. And when presented with this evidence, no reasonable, properly instructed jury could convict. No matter how many times the state tried her, a properly conducted trial could never result in a conviction. She is therefore actually innocent for purposes of the gateway, and she is not subject to the one-year statute of limitations. The state argues that Ms. Pacheco's claim is one of mere legal innocence. That's wrong, and the Supreme Court's decision in Boosley shows why. First, Boosley makes clear that actual innocence... Counsel, counsel, sorry, can I interrupt? Yes. Before, sorry. Before you talk about Boosley, could you address the waiver issue the state has raised? They argue that you, because you didn't raise the actual innocence argument until your supplemental brief after the COA was granted, that you've waived that issue. Could you address that argument? Sure. Your Honor, there's no waiver resulting from the failure to raise actual innocence before the district court, because the district court raised the time of Arsua Spontan, Ms. Pacheco had no opportunity to respond or address the time before the appeal. As to the actual innocence not being raised in the pro se opening brief, I would just say that was a pro se brief. I think any argument raised in the supplemental brief should be sufficient to preserve that claim for purposes of this appeal, particularly in light of the fact of Ms. Pacheco's pro se status. The purpose of the appellate rules on briefing, which say that, I'm sorry, this is in the briefs, but basically states that the full opportunity to respond to the argument at this point. We're addressing the issues raised by this court and the COA, and there's no waiver. Can you address the Childers claim? I think both parties talked about it in their briefs. The Childers case we recently discussed. Yes, Your Honor. A similar case where the actual innocence claim was not raised until the COA supplemental brief after counsel was appointed. Childers is distinguishable because in Childers, the government or the state actually raised the time bar, and the petitioner did respond to the petition. Was that issue, however, instrumental to the court's opinion? I don't think we mentioned that in that opinion. They didn't mention it, but it follows from ordinary principles of forfeiture and waiver that if you have the opportunity to address something below and you don't, that is a forfeiture or waiver. But where you haven't had that opportunity, there's no forfeiture or waiver for failing to address it. Ms. Pacheco had no opportunity to address the time bar whatsoever in the proceedings below. The district court raised it sui sponte for the first time in quarter, dismissing her case. There was a motion to dismiss, but it wasn't based on AEDPA's statute of limitations. No, it was based on a totally different rule and did not mention timeliness or the time bar at all. Thank you. To return to Boosley, first, Boosley shows that actual innocence does not require a petitioner to dispute that she actually engaged in the conduct that was the original basis of the Childers conviction. She just has to point to facts that would now lead a properly instructed juror to acquit. Second, Boosley shows that a claim of factual innocence can be based on a change in law that would lead a juror to acquit. That your claim depends in part on a legal argument does not, as the state suggests, transform the claim into one of mere legal innocence. And third, Boosley shows that actual innocence is charge specific. The Supreme Court said that Mr. Boosley would be innocent if you could show that he did not use the firearm as he had originally been charged. And it rejected the government's argument that Mr. Boosley would have to further prove that he was innocent of an uncharged alternative means of committing the offense. In other words, the question of whether a jury would acquit is whether a jury would acquit you of the crime that you were convicted of and not whether the jury would convict you of any crime. And so Boosley really knocks the light out of the state's arguments because it shows that in order to establish actual innocence, Ms. Pacheco has to prove that a jury would not convict her of the charged offense and she can do so. The fact that her Indian status and the location of the offense in Indian country mean that no reasonable jury would convict her of Oklahoma first degree murder. Can you cite any cases where the actual innocence exception from procedural bar was raised successfully because the case was tried in the wrong forum? That's the issue. No, Your Honor. And I'd also just like to respond to this idea that this is a claim based on forum selection. I think that's really a misunderstanding of what the error in this case is. This isn't a choice between acceptable alternatives because in light of Ms. Pacheco's Indian status and the location of the alleged offense, her conduct could not violate any Oklahoma crime. And Oklahoma lacks jurisdiction over, you know, the lack of jurisdiction is total and includes the authority to define what conduct is a crime. You know, this also kind of goes into another area. Explain to me the equities of it. The exception for sure. Habeas is an equitable. Let me say a few things and then you can respond. Habeas is an equitable remedy and the actual innocence exception is equitable in nature. And why is it inequitable to reject an actual innocence claim in this situation when the defendant was charged with the same conduct, was convicted by a jury, it was reviewed on appeal? What's unfair about denying the actual innocence exception in this case? I think we need to get the first principles here. You're making a nice technical argument, but it doesn't grab me equitably. Of course, Your Honor. And, you know, I really think this is not a technicality, though I understand your point and understand that this is really, I think, behind a lot of what the state is arguing. Assessing whether a sentencing court had jurisdiction over the defendant is a core purpose of habeas review. Indeed, it's the original purpose. And so by challenging her conviction on the ground that the state lacked the authority to convict her, Ms. Kuchenko is vindicating the habeas right that was guaranteed by the founders. It's also not a technicality because Indian sovereignty is a fundamental right embedded in the text and structure of the Constitution. But that's an argument on the merits, assuming that the issue is properly presented in a habeas court. Here, it was not properly presented in a habeas court. It would otherwise be procedurally barred, and you're trying to overcome the procedural bar. The argument you're making is why habeas relief should have been granted if it had been properly raised. That's fine. That's a totally convincing argument. The question is, why should your client be able to get habeas relief when the proper procedural steps were not taken and the case would otherwise be procedurally barred? Yeah, and I had two responses to that in addition to what I've already said. First, I just want to mention that there are major substantive differences between the Oklahoma murder statute and federal first degree murder. And we absolutely don't concede that Ms. Kuchenko would necessarily be convicted of federal first degree murder. But also, going to the equitable question, while the actual innocence gateway is an equitable remedy or equitable gateway around the procedural bar, the Supreme Court has set the standard for what actual innocence means. And the Supreme Court took into account the equitable considerations balancing finality versus the interest of justice in a particular case. And when the Supreme Court took those concerns into consideration, it announced the rule that actual innocence requires the defendant to show that it is more likely than not that no reasonable juror would have convicted her. Now, because the Supreme Court has announced that rule, that reflects the proper balance of the equities, and that's the rule that the Supreme Court is required to apply. But the test from the Supreme Court is actual innocence, and that's the question we need to answer. And there are certainly circumstances where actual innocence is not a gateway to habeas relief when, in fact, the defendant couldn't have been convicted because the evidence should have been suppressed or things like that. So it's not just the fact that someone would not have been convicted. It's that the defendant is actually innocent of the offense charged. And so I'm not sure the Supreme Court has told us what actual innocence means in this context. That's why I asked if you had any questions, any authority with respect to forum issues. Your Honor, I think Mousley really answers a lot of these concerns because I think what the sort of concern you're getting at is if we're not saying she didn't – if our claim of actual innocence isn't based on a challenge to the facts proved at trial or the facts admitted at guilty plea, how can you say that you're actually innocent? And that's exactly what happened to Mousley. There, Mr. Mousley had it contested that he had possessed a firearm, and at the time that he was pleaded guilty, that was all that was required. And that was a mistake, and the Supreme Court subsequently held in reviewing a habeas case that if Mr. Mousley could show that he had – excuse me, I have to step back a minute. So after Mr. Mousley pleaded guilty, the Supreme Court held that mere possession was not enough not to show actual employment. And so on habeas, the Supreme Court said as long as Mr. Mousley can show that he didn't actively employ the gun, he has a claim of actual innocence. It didn't matter that Mr. Mousley had admitted to possessing the firearm. Well, that's because he wasn't charged. It didn't matter that he actually possessed the firearm because he wasn't charged with actual possession. If he had been charged with actual possession, there wouldn't be an issue in Bowsley. Am I wrong about that? Because she was Indian, in Indian country, the statute never reached her, and they never reached her conduct while she was in the Indian reservation. I also think, you know, Bowsley shows that this idea that the state has, and I think that you're addressing it too, is, you know, the conduct could still be criminal. So what's the issue here? In Bowsley, of course, possessing a firearm following a felony conviction or a connection with a controlled substance offense can be criminalized. But the question isn't whether it could be criminal or whether another legislature could have breached it or whether even this legislature, using different words, could have defined this to be a crime. The question is whether this crime that the defendant was convicted of is one that she is, in fact, guilty of violating. And here, on these facts, Ms. Pacheco is not guilty of Oklahoma first-degree murder. No matter how many times the state tried her, any properly conducted trial would result in her acquittal. And under the Supreme Court's articulation of the actual innocent standard, that means that she is actually and that she is, in fact, innocent. Because based on all of the facts that we now know and the law that we know applies, Ms. Pacheco can never be convicted of this offense. If there's no further questions, I'd like to reserve my remaining time for rebuttal. Thank you. Thank you. Ms. Hunt. May it please the Court, good morning. I'm Caroline Hunt from the Oklahoma Attorney General's Office, appearing on behalf of Respondent Warden L. Hopde. I will turn to actual innocence. My opposing counsel spent her time this morning. And before I address the waiver issue, I would like to correct a misstatement made in the reply brief and this morning, and that is that there is a substantive difference between what Ms. Pacheco would be guilty of in state court versus federal court. In fact, Section 1111A of Title 18, the federal murder statute, prescribes both murder committed with malice of forethought or via a number of enumerated felonies, one of which is child abuse. So child abuse murder is, in fact, a crime under federal law. And counsel may not be aware, but during the time frame in which it was not clear whether Ms. Pacheco would obtain relief on her state court conviction, she was actually charged in the Eastern District of Oklahoma with child abuse murder. And when she was ultimately denied relief in state court, the U.S. Attorney, Assistant U.S. Attorney, and her counsel in that case filed a motion to dismiss in which they said her state court conviction had been upheld, and they described it as the identical charge currently before this court. And so she absolutely would not receive a change in terms of severity of crime or punishment in federal court. Turning back to the issue of waiver and Childers, one important distinction in this case, especially vis-a-vis Day, the Supreme Court case relied on by Ms. Pacheco, is that here we do not have a district court sua sponte raising untimeliness as to the original 2254 petition. What we have is an original petition that's timely. The state responded on the merits. It's fully briefed. It's ripe for adjudication. And some three years after that initial filing, petitioner moved to supplement. That's how she labeled it. The state reasonably responded in that posture and said why a supplement wasn't proper. The district court then gave a more generous and perhaps more correct liberal construction and asked, and basically viewed it as an issue of if she's wanting to amend to add this new claim. And under Rule 15 in the cases of this court, the district court has the discretion under Rule 15 to consider whether amendment is in the interest of justice. And that includes considering futility based on untimeliness. And so that is what distinguishes this from Day, because we have a three-year pending habeas proceeding that is fully ripe for adjudication. And petitioner, as the moving party, had some burden at that point to show she was entitled to amend. And so that is the posture in which the district court raised this issue of timeliness sua sponte. And I will point out in Childers, this court did agree that the opening pro se brief, which doubles as the COA application, the failure to raise actual innocence in that pleading, can result in waiver of an actual innocence claim. Well, but as counsel pointed out, we do have a difference in Childers, which there wasn't any sua sponte raising of the timeliness issue as there was here. So there was an opportunity apparently below to respond to the timeliness issue. That really didn't happen here. You're absolutely right, Your Honor. And the state's position would be the unique procedural history here, where three years into the habeas proceeding, when a habeas petition is fully ripe for adjudication, fully briefed, a district court does not abuse its discretion at that point in further delaying the proceedings to order supplemental briefing on timeliness. Our position is essentially under these specific facts. Pacheco bore an initial burden she might not usually to show why she's entitled to amend, which would include the timeliness of her claim. I didn't realize that, though. I mean, that wasn't specified to her. She's pro se. She is. That's a stretch. But the initial habeas application. You're talking about waiver or forfeiture. Absolutely. And I'm going to return to the merits. Do you really want us to decide this case on waiver? Don't you want to get this issue resolved? Absolutely. You're right, Your Honor. As a practical matter, this is a very important issue that we would like resolved. As you can imagine, we have a flood of McGirt-based habeas petitions pending with this issue. And in fact, 17 district courts have dismissed those petitions as untimely, at least implicitly finding they don't implicate actual innocence. And three district courts have expressly said this is not a claim of actual innocence. And this court, in denying a certificate of appealability in Jones v. Pettigrew, as cited in our brief, said the district court's resolution of the petition was not debatable among jurists of reason. And that court below had expressly found that a McGirt-based claim did not raise a claim of actual, factual innocence. And in preparing for argument, I noticed, too, that in In re Glaze, one of the second or successive orders cited in our brief, this court dropped a footnote noting that Mr. Glaze had also attempted to invoke the provision for a factual innocence type claim for a second or successive petition. And this court said this is not a claim of actual innocence. And I will turn to Bowsley. One thing I would like to clear up as well, the opposing counsel repeatedly said that Bowsley held, that Bowsley had raised a claim of actual innocence. In fact, that's dicta. The holding in Bowsley was about finding that Bailey was substantive and retroactive. And in remanding the case, the Supreme Court said this could be a claim of actual innocence. In fact, as recently as 2019 in Bowen, this court recognized that it's an open issue whether an innocence claim that is based on a change in law and not new evidence can meet the gateway. And then as we, and we, excuse me, sorry. Correctly, we assume that it could be. Yes. Because both parties agreed. Yes, absolutely. We didn't explicitly decide it. We cited a couple of cases that would indicate that it would be permissible. That's right. And even if we do assume, even if we take Bowsley, and even if we take the law of other jurisdictions that, excuse me, recognize affirmative defenses as actual innocence claims, which again, the state disputes that and stands with the law of this circuit. Even then, these are still fact-based defenses. They either go to the conduct underlying the crime as it's currently defined by federal and state law, even if there's been a change in the law. They may even negate an element of crime, the crime, excuse me. And that's what makes Petitioner's McGirt claim fundamentally different, is nothing about her McGirt claim negates the elements of child abuse murder under Oklahoma law, nor did McGirt change the elements of child abuse murder under Oklahoma law or redefine them as the Supreme Court did in Bailey as to use in 924C. And so even under the broadest definition of Bowsley and taking into account the law of other jurisdictions, her claim is not like hers claims and is indeed a legal-based defense and not a claim of actual innocence. I'm not quite understanding the defense, legal-based defense argument, I guess. Essentially... I mean, you do have to prove, and it's in the information, it's in the first paragraph of the information that this occurred in the state of Oklahoma in Cherokee County. Instructions recite, as they always do, they refer you back to the information and they recite that this occurred in the state of Oklahoma in Cherokee County. That's an important jurisdictional fact. A two-part answer. First, as a practical matter, I will say these Indian country claims do not go to the jury. I've seen 100 remands of pending direct appeals that were pending when McGirt came down. Every one of them was sent back to the district court. And what I'm hearing from district attorneys on the ground is these are pre-trial determinations made by a judge when someone is determined to be Indian and the case is referred to either the federal prosecutors or the tribal prosecutors. Typically, you're right, a district attorney always elicits testimony that it occurred in a particular county as a matter of venue. I don't know that that's dispositive, but it's just a practical matter I'll note, is that these are not things going to a jury, at least in the state system. But then second, as far as my distinction between factual or legal, when I say legal, I mean it is really uncoupled from anything having to do with the conduct underlying the crime. And when I look at every one of the cases that Ms. Pacheco's counsel cites, that's what every one of them have in common. These cases outside the circuit, for instance, like the Fifth Circuit case, it's about self-defense and defense of necessity. Brits from the Seventh Circuit is about insanity. Jones from the Eighth Circuit is about brain damage that prevented malice aforethought. And so that is what makes the McGirt claim different, is nothing about location or her Indian status changes the fact that she beat A.H. so severely, it lacerated her liver, and she slowly bled to death. She, in a plain language sense, meets the definitions of child abuse murder under Oklahoma law, even if she has an affirmative defense under the Major Crimes Act, where that prosecutorial authority is preempted and should be in federal court. Are you aware of any cases where an actual innocence argument has been rejected, even though it was clear that if the case were tried at this later point, a verdict of acquittal would be a foregone conclusion? Yes, I think there are examples of that. One, and I can file a 28-J with this, but in Steele v. Young, this court found that a double jeopardy claim did not qualify as a claim of actual innocence. And I think that's an example where there is a legal impediment to being convicted of a particular crime because of the double jeopardy clause, and it could result in acquittal if that issue were given to the jury. And yet this court said that is not a claim of actual innocence. In Morales v. Jones, this court affirmed the dismissal of time barred of a habeas petition, where a petitioner alleged that he was convicted in Oklahoma, but that his conduct was actually in Texas. And this court didn't expressly address the issue, but it said, as with any other habeas claim, it is subject to dismissal for untimeliness. And so again, I would put this in the category of cases where we have a huge number of courts at least implicitly finding that these type of claims are not claims of actual factual innocence. And I would like to make one last point. As far as your questions, Judge Hartz, about form, I would like to remind this court, as discussed in our brief, that this court's precedent in Cutch said this is a form issue that is not about guilt or innocence. And if this court has no further questions, I would ask that you please affirm the denial of Ms. Pacheco's habeas petition, including the denial of her motion to amend. Thank you. Thank you. You have a few seconds left, 43 seconds. Ms. Shen, would you like to proceed? Sure. First, validly, it's clear that actual innocence can be based on a change of law, and that the question is what a reasonable jury would do in light of that change of law. And even if that's dicta, the dicta of SCOTUS is essentially binding on this court. Second, Indian status isn't an affirmative defense. It's the state's burden to prove all facts going to jurisdiction. Even if that's readily litigated, it's still the state's burden and would be something they would have to prove at a jury trial. And finally, Ms. Pacheco's status as an Indian and the location of her offense are facts that they would have to go to a jury. The fact that they're undisputed doesn't transform this into something like a time bomb. And with that, we would ask the district court to be reversed. Thank you, counsel. Case is submitted.